**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| AIR ALLIANCE HOUSTON, et al.,<br>Petitioners,<br>v.<br>U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br>Respondents. | Case No. 26-1070 (consolidated with No. 26-1072) |

**EPA'S MOTION TO
RECONSIDER ABEYANCE ORDER**

EPA requests that the Court reconsider its August 13 Order holding these consolidated cases in abeyance over the government's objection. Fed. R. App. P. 27(b); ECF No. 2188182. EPA and regulated industry are prejudiced by the delay, and Petitioners have offered no legitimate reason for seeking to prolong uncertainty.

The challenged rule repealed unnecessary, costly, and technically infeasible requirements for power plants that necessarily must plan years into the future and have been the subject of regulatory whiplash and high-stakes litigation. In recent months, environmental petitioners and their allies have employed a novel strategy in Clean Air Act cases—delay resolution of their petitions for review by any and

all possible means.[1] Rather than brief the merits, Petitioners seek to prolong the cloud of uncertainty by postponing cases over EPA's objection. Nothing about the statute's reconsideration process or the pending administrative petition warrants excusing Petitioners from proving up their arguments. This case can and should be briefed without delay.

EPA requests that the Court reconsider and deny abeyance.

Petitioners oppose this motion. Intervenor States and Midwest Ozone Group, NACCO Natural Resources Corporation, NorthWestern Energy Group, Talon Montana, and Talen Energy Supply do not oppose. Intervenors America's Power, Associated Electric Cooperative, Basin Electric Power Cooperative, Big Rivers Electric Corporation, East Kentucky Power Cooperative, Minnkota Power Cooperative, National Rural Electric Cooperative Association, Sunflower Electric Power Corporation, Lignite Energy Council, and National Mining Association support this motion.[2]

---

[1] *See, e.g.*, Mot., ECF No. 2173981; Mot., *Sierra Club v. EPA*, No. 26-1055 (D.C. Cir. May 5, 2026), ECF No. 2171960; Mot., *Am., Pub. Health Ass'n v. EPA*, No. 26-1037 (D.C. Cir. Apr. 16, 2026), ECF No. 2169080; Mot. *Env't Def. Fund v. EPA*, No. 26-1152 (D.C. Cir. July 15, 2026), ECF No. 2183426; Mot., *Am., Pub. Health Ass'n v. EPA*, No. 26-1037 (D.C. Cir. July 29, 2026), ECF No. 2185720.

[2] Counsel for intervenors Luminant Generation Company, Oak Grove Management Company, Westmoreland Mining Holdings, Westmoreland Mining, and Westmoreland Rosebud Mining did not provide their positions.

## BACKGROUND

### I. Statutory and regulatory background

An overview of the statutory and regulatory background is provided below. *See also* EPA's Opposition at 2-4, ECF No. 2175591.

#### A. Clean Air Act regulation of air toxics

Section 7412 of the Clean Air Act directs EPA to set technology-based emission standards for categories of sources that emit hazardous air pollutants (or colloquially, air toxics). 42 U.S.C. § 7412(d). After these standards are in place, EPA must conduct two types of reviews. The first is a risk review, where EPA considers whether the standards provide "an ample margin of safety" to protect public health and the environment. *Id.* § 7412(f)(2)(A). The other review—at issue in this case—is a recurring technology review. *Id.* § 7412(d)(6). In the technology review, EPA considers "developments in practices, processes, and control technologies" and revises the standards "as necessary." *Id.*

#### B. Regulation of air-toxic emissions from power plants

EPA set standards to regulate air-toxics emissions from coal- and oil-fired power plants in 2012. 77 Fed. Reg. 9304 (Feb. 16, 2012). Eight years later, in 2020, EPA completed its risk review and first technology review. 85 Fed. Reg. 31286 (May 22, 2020). For both reviews, EPA determined that revisions to the standards were not warranted. *Id.* at 31314/3; *see id.* at 31298. In 2024, EPA disagreed with

the 2020 technology review and determined that certain "developments in practices, processes, and control technologies" warranted revisions to the 2012 standards. 89 Fed. Reg. 38508, 38508/1, 38518/3 (May 7, 2024).

### C. The 2026 Rule

In 2025, EPA proposed to repeal three of the 2024 rule's revisions. 90 Fed. Reg. 25535 (June 17, 2025). In the 2026 final rule ("Rule"), EPA found that these three revisions were not "necessary" because they "impose unwarranted compliance costs or raise potential technical feasibility concerns." 91 Fed. Reg. 9088, 9090/1-2 (Feb. 24, 2026).

## II. Clean Air Act judicial review and administrative reconsideration

Clean Air Act section 7607 limits and streamlines judicial review in multiple ways. It specifies only sixty days to challenge national rules such as this one and requires that such challenges be brought in this Court. 42 U.S.C. § 7607(b)(1), (d). Only objections that were raised with reasonable specificity in public comments may be raised in a judicial challenge to the Rule. *Id.* § 7607(d)(7)(B).

Parties may also petition EPA for reconsideration. *Id.* § 7607(d)(1)(C), (7)(B). Such a request does not affect the finality of a rule for purposes of judicial review. *Id.* § 7607(b)(1). Nor does the Act specify a timeframe for EPA's resolution of a reconsideration request. *See id.* § 7607(d)(7)(B). Any claim of unreasonable delay on a reconsideration petition must be brought in district court. *See id.*

§ 7604(a). Consistent with the Act and longstanding practice, EPA may consider a reconsideration request while continuing to litigate a final rule. *See, e.g.*, *Am. Lung Ass'n v. EPA*, No. 19-1140 (D.C. Cir. Nov. 22, 2019), ECF No. 1817249; *Union of Concerned Scientists v. NHTSA*, Case No. 19-1230 (D.C. Cir. Feb. 4, 2020), ECF No. 1826992.

**III. Procedural background**

At the end of March 2026, public health and environmental organizations ("Environmental Petitioners") and a coalition of states and local governments ("State Petitioners") petitioned for review of the Rule. Various entities, including a coalition of states, power plant owners and operators, associations and businesses representing energy and mining interests, and electric power cooperatives intervened in defense of the Rule.

On April 24, Environmental Petitioners submitted a reconsideration petition to EPA. On May 18, Petitioners moved for a six-month abeyance pending EPA's action on their reconsideration request. Mot., ECF No. 2173981. EPA and thirteen industry intervenors opposed. EPA Opp., ECF No. 2175591; Industry Opp., ECF No. 2175586. After Petitioners replied, ECF No. 2176868, they filed a notice of an abeyance order in a different case, ECF No. 2184445. EPA responded to the notice on July 24. ECF No. 2184973. On August 13, the Court issued an Order holding this case in abeyance pending further order. ECF No. 2188182. The Order also

directs the parties to file motions to govern further proceedings by November 18. *Id.*

**ARGUMENT**

EPA has a strong interest in defending this Rule without delay. As detailed in EPA's opposition to Petitioners' motion, EPA has opted to proceed with this litigation and Petitioners' administrative petition on separate tracks. The Clean Air Act authorizes EPA to do so. In contrast, the Act does not allow Petitioners to secure what amounts to a deadline for deciding reconsideration through this Court.

Delaying resolution of this case harms regulated entities and the public. Petitioners and their allies have decried the Rule as unlawful, implying that one way or another, regulated entities and their ratepayers will be forced to bear the costs of additional controls that EPA now believes are unnecessary. Such uncertainty affects industry's long-term planning decisions and can have a chilling effect on investment, particularly where, as here, the regulated industry is subject to rate and planning constraints and processes. *See* Industry Opp., ECF No. 2175586 at 4-5 (May 28, 2026). A merits decision in upholding the Rule would clear away this uncertainty that Petitioners created. On the other hand, if the Court finds some flaw with the Rule, EPA could take swift action to address it with less potential for disruption to industry than if this case had languished on the Court's docket for several more months (or perhaps years).

Likewise, EPA is harmed by the abeyance. Given limited resources, EPA must exercise discretion in assigning staff to carrying out a number of competing obligations. The Act places no date-certain deadline on deciding petitions for reconsideration of a final rule. In contrast, the Act specifies timelines for initial regulations and various reviews of existing regulations. By effectively requiring EPA to decide petitions for reconsideration as a predicate to defending final rules, Petitioners impose an additional resource burden on the Agency.

While EPA is harmed by abeyance, Petitioners will suffer no harm from proceeding now. They are not subject to regulation under any formulation of the standards. Nothing in their administrative petition for reconsideration precludes them from proving up their challenges to the Rule. And if any issues in the petition could not be litigated now, those issues could be addressed, if necessary, at a later time.

Judicial economy is also best served by proceeding without delay. *See Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (statement of Judge Rao) ("[T]he primary reason for holding a case in abeyance is to promote judicial economy."). Here, unlike in many cases where EPA supports abeyance, EPA has not expressed any intent to reevaluate its litigation position or reconsider the Rule. *See id.* (describing circumstances when abeyance "may be warranted").

Petitioners have not identified any legitimate development that could obviate the need for judicial review of the issues that are properly before the Court now.

Moreover, abeyance is in tension with the Clean Air Act's express preference for prompt judicial review of EPA's rules. A prime example of this congressional preference is the judicial-review deadline. While the default deadline to challenge agency actions is six years, the Act limited that period to 60 *days*. *Compare* 28 U.S.C. § 2401(a) *with* 42 U.S.C. § 7607(b)(1). Congress thus envisioned that in general, litigation over Clean Air Act challenges should occur months, not years, after a rule is finalized. In addition, section 7607(b)(1) expressly rejected the general rule that a pending reconsideration request makes an otherwise final agency action unreviewable. Congress explained that this provision is "designed to ensure prompt judicial review of final actions by EPA" and to "assure" that a pending reconsideration request "does not delay that review." S. Rep. No. 101-228, at 3755 (1989).

The effect of Petitioners' novel maneuver is to put EPA on a schedule for deciding a petition for reconsideration on an already final rule. But the Clean Air Act does not confer jurisdiction or waive sovereign immunity for such relief in this Court or any courts of appeals. Rather, the avenue for obtaining relief based on allegations of unreasonable delay is the Act's citizen-suit provision, which can be invoked only in district court. *See* 42 U.S.C. § 7604(a) ("The district courts of the

United States shall have jurisdiction to compel . . . agency action unreasonably delayed, except that an action to compel agency action . . . which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 7607(b) of this title."). Petitioners err in asking this Court to accomplish as a matter of case management what it would lack jurisdiction to order under the Act.

Indeed, in arguing to lift the abeyance in a case challenging EPA's 2020 risk review, several of the Environmental Petitioners recently acknowledged that "lack of final action on the reconsideration petition does not preclude the Court from resolving this case." Mot., *Air Alliance Houston v. EPA*, No. 20-1268 (D.C. Cir. July 29, 2026), ECF No. 2185739 at 10; *see also id.* at 13-14 (recognizing that the Clean Air Act "provides that a reconsideration request does not affect the finality of a rule for purposes of judicial review" and emphasizing congressional intent for prompt judicial review). Here, where EPA opposes abeyance and intends to proceed with the litigation and the administrative process on separate tracks, the Court's Order is in tension with this statutory design and congressional intent.

Nearly six months have passed since EPA published the Rule. The Court's Order would require EPA to wait another three months before renewing its proposal that this case proceed to merits briefing. Absent the Court's reconsideration of the Order, EPA anticipates that Petitioners will continue to seek to postpone litigating

this case, perhaps indefinitely. *See supra* Note 1 (listing cases where petitioners have sought to delay litigating their challenges to recent EPA rules). And without the Court's reconsideration, submitting administrative petitions and seeking abeyance may become a routine tactic for petitioners who wish to maintain a cloud of legal uncertainty over EPA's rules.

If this Court were inclined to retain its order, litigants would benefit from the Court's explanation of its rationale. Such an explanation would be illuminating not only for this case, but could help inform litigants' decisionmaking in other cases.

**CONCLUSION**

For the foregoing reasons, the Court should reconsider its August 13 Order and deny Petitioners' abeyance motion.

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
ROBERT N. STANDER
Deputy Assistant Attorney General

/s/ *Sonya J. Shea*
SONYA J. SHEA
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
999 18th St., North Terrace, Suite 600
Denver, CO 80233
(202) 598-3320
sonya.shea@usdoj.gov

Of Counsel:
Howard J. Hoffman
U.S. Environmental Protection Agency
Office of General Counsel
Washington, D.C.

August 24, 2026

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), by Microsoft Word's count, this document contains 2,058 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document is in 14-point Times New Roman font, a proportionally spaced font.

/s/ *Sonya J. Shea*
SONYA J. SHEA